Date 10-25-2020
12 40 pm

To: Clerk of the civil court of the EASTERN district of Virginia of The United States


Dear Clerk, would you please filling this motion and included is A Castiers Check payable to U.S. Courts of the sagtern District of Virginia of the United States of America


Thank you,
Brock Beckstedt (757) 2892725
Citizen of the U.S.A
2892725
Born in Norfolk VA
Resides in Virginia Beach, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORFOLK DIVISION OF VIRGINIA

City of Virginia Beach,
        PLAINTIFF

    VS.

JAMES PAUL BECKSTEDT,
        DEFENDANT

NOTICE OF REMOVAL

COME NOW, James Paul Beckstedt and Brock Andrew Beckstedt and file this notice of removal of this State Commonwealth of Virginia action to the United States District Court for the Eastern District of the Norfolk Division, and set forth the following:

1. This suit is a civil action filed in the Circuit Court of the City of Virginia Beach on or about March 04, 2020 entitled "City of Virginia Beach vs James Beckstedt, Case No. CL20-1881. A copy of this Summons and complaint in this action is action is attached hereto and constitutes all process, pleadings, and orders served upon plaintiff and defendants in this action.

2. The above described action is one of which this Court has Jurisdiction under the provisions of U.S.Title 28, of the United States Code, section1332, and is removable to this court pursuant to provisions of Title 28, section 1441, in that it is a civil action wherein the matter in controversy of civil rights of family living trust members of the United States born and raised citizens, estimated worth of an over a million dollars.

Respectfully submitted,

Brock Andrew Beckstedt
James and Judith Beckstedt Family Living Trust

July 11, 2020
Updated by: R. Hulbert

On 07/11/2020, Investigator Hulbert returned to Snowmass Court to attempt an interview of the next-door neighbor at house number 5300. Investigator Hulbert identified himself to the resident, Lester Wahrenburg and advised that he (Hulbert) was investigating the living conditions of the house next door. Mr. Wahrenburg offered much information. Wahrenburg advised that he was the "block Captain" for the neighborhood watch. He stated that he owner (Thomas- no last name) of #5304 no longer lived there and that the house was rented. He believed that the person renting the house lived around the corner where he was operating a daycare for children. Wahrenburg further stated that the person renting the house (no name) was in turn renting #5304 out (much like a sub-lease) as a group home. He stated that he is not aware of any valid licensing and believes that there is none on file. Wahrenburg stated that at one point, as many as 17 people were living in the house. Based upon his personal observations, he advised that there are between 5 and 6 people living in the large addition of the home, and approximately 5 living in the one-story portion of the residence. At one point, the living arrangements were divided by gender; men living in one side and women in the other side. He advised that presently, the home is co-ed. Wahrenburg stated that almost every room of the home had been turned into bedrooms to accommodate more residents.

Mr. Wahrenburg provided Investigator Hulbert with the name of the primary caregiver who stays on-site most of the time. He advised her name was "Wendy" but had no last name. At that point, Investigator Hulbert noted the the license plate number of a Sliver Toyota Sienna parked in the driveway (Virginia license VVP-9835). The vehicle is registered to Wendy Vencia Corridon. It was determined that Corridon is a licensed Nurses Aid. Wahrenburg further advised that Corridon attends to another residencal type home near Dam Neck base. He has observed 2 nurses or aids (in uniform) on site throughout the week. One nurse goes into each side of the residence.

Wahrenburg stated that during the time of operation, he has only observed 2 incidents where the police were called to the home. One of the calls involved two of the female residents "brawling and yelling" in the front yard.

Wahrenburg advised that he called "the city" on them because of the grass and unkempt state of the front yard. He said that someone from code enforcement contacted him and said that he would be notified of the outcome, but no one ever contacted him again. He further stated that after making the call, the front of the property was cleaned up, the grass is kept cut, and the parking problems were resolved. Wahrenburg stated that there were always 4 trashcans placed out on trash day. He stated that the residents were friendly and after around 5 o'clock in the evening, it was "quiet over there".

Investigator Hulbert thanked Mr. Wahrenburg for his cooperation and provided a business card for future reference.

·Upon arrival, Investigator Hulbert noticed that the front door was unlocked and unattended; he and the client walked right inside. At no time did anyone come to inquire as to their reason for being on the property. Investigator Hulbert noted that there were no caregivers on site. Upon further inspection, he also noted that there were no licenses or other certifications visible.  There was no sign of supervision for the entire 40 minutes that Investigator Hulbert and the client were at the location.
Investigator noted that there were approximately 5 other adults (3 males and 2 females) who were living at the residence.

As he proceeded to Mr. Beckstedt's room, Investigator Hulbert observed the kitchen area and noted the disarray.  He also observed a "sharps" container on the countertop. While passing through the hallway, Investigator Hulbert observed that the light fixture had an exposed lightbulb.

Mr. Beckstedt shares a room with another man. Investigator Hulbert observed both beds unmade; the client's father's bed did not have sheets on it, merely torn plastic, and a stained pillowcase. He also observed the carpet was stained and covered with filth. He further observed a chest of drawers with broken drawers hanging out and clothing piled on the dirty floor. He also noted that there was a partially filled plastic urinal sitting on the carpet by the doorway.

Investigator Hulbert inspected the bathroom while the client took his father outside. Although the bathroom appeared in better condition than the rest of the house, Investigator Hulbert noted that there were no safety measures in place such as handrails etc. to make it compliant with the American's with Disabilities Act.
Once outside, Investigator Hulbert observed bruises on Mr. Beckstedt's arm. The investigator also noted that Mr. Beckstedt's clothing was dirty, and it appeared that the man had not bathed in several days. The gentlemen were on the patio in the backyard next to an in-ground swimming pool. Investigator Hulbert observed that the pool was not maintained and unusable as the water was green and full of algae. He also observed that there were several PCV (plastic) pipes lying on top of the ground and running to the pool. He noted that it was an extreme safety hazard.  Although there is an approximately 6-foot-high privacy fence surrounding the yard, the gate to the privacy fence was partially open and there were no signs of a lock. The gate opens to the parking lot of Infinity apartments at Centerville Crossing 5657 Infinity Lane, Virginia Beach, and the Royal Farms service station/mini mart.

Investigator Hulbert walked around to the front of the property and observed raw sewage saturating the ground at the "clean-out" pipe. At first glance, the residence appears to be a one-story ranch style house, but there has been a two-story addition built onto the house. He also observed that the gas line going into the two-story addition was attached with a copper line (potential code violation).

Investigator Hulbert and the client both left the property.

## CASE NOTES

**Date: July 2, 2020**
**Updated By: J. Cale**

The Client Brock Beckstedt advises that his father James Paul Beckstedt is currently living in an assisted living home.  The home is located on Snowmass Ct, Virginia Beach, VA. Brock advises he believes the living environment is not to State Standards of living and in some cases dangerous.   Brock wishes to have a Private Investigator go with him for a visit at the home and document any deficiencies and or dangerous conditions.

The client request that the surveillance be conducted on July 10, 2020 starting at 10:00am.

Investigator R. Hulbert is assigned to the case.

Date July 13, 2020
Updated By: J. Cale

Wendy Vencia Corridon
DOB: 02/04/1964
SSN:P 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
Address: 114 Wreck Shoal Dr
            Newport News, VA 23606
                1728 Eleni Ct
                Virginia Beach, VA 23453
Health Care License
Nurse Aide
License # 1401090032
License State: VA
Status: Active
Issued: 01/11/2002

Filed Chapter 7 Bankruptcy 05/21/2003

**Date: July 10, 2020**
**Updated by: R. Hulbert**

At approximately 10:00AM, Investigator R. Hulbert accompanied client Brock Beckstedt to 5304 Snowmass Court, Virginia Beach, Va. 23464 to conduct welfare check on client's father, James Paul Beckstedt. The client contacted Beach Security and Investigations after noticing unexplained bruises on his father's arm. The client wanted Investigator Hulbert to document any obvious health and safety issues, and any potential violations of safety standards in the home.

July 14, 2020
Updated by: R. Hulbert

Based upon information provided by Lester Wahrenburg, Investigator Hulbert conducted a search of various records. According to property records, the owners of 5304 Snowmass Court were last listed as Sara and Thomas Huntz. This supports Wahrenburg's statement that "Thomas" was the owner. Investigator Hulbert was able to locate information on Thomas and Sara Huntz, formerly of Virginia Beach, living at 255 Elysian Dr., Moorseville, N.C., 28117. Sara Huntz works at Driver Rehabilitation Services. Her credentials show that she is a certified occupational therapist. Based upon an Internet search, it can be shown that the residence was for sale last year but taken off the market and then listed with Real Property – Tidewater 2244 General Booth Blvd. Virginia Beach, VA. as rental property units. Further searches show that the property was listed on Apartments.com as rental units. The property shows "no vacancies" now on Apartments.com and has been removed from Real Property's site.

Based upon the information that a person "around the corner with the daycare" was the actual renter of the home, Investigator Hulbert drove to the house which Mr. Wahrenburg described as 'the large house around the corner." Investigator Hulbert noted that 1952 Blue Knob Dr., Virginia Beach, VA. fit the description given and observed several large plastic playground items scattered around the back yard. He further observed more play items in the side yard.

Investigator Hulbert searched the Virginia Department of Social Services database and found that Randee Holmes was licensed (Facility ID # 1095157) to operate a family day home at that location. City Data shows the owners of the home as Thomas & Randee Holmes.

Based upon information provided by the client, Investigator Hulbert made inquiries with Jewish Family Services, the City of Virginia Beach, and the Virginia Department of Social Services. The City of Virginia Beach permits division had no permits listed for the address. Further, city code enforcement advised that one would have to have a formal complainant before it would investigate for any code violations. The Virginia Department of Social Services advised that they did not have any information related to the address. They stated that no referrals from the Virginia Beach office had been made to this location. They suggest contacting the Virginia Department of Health for any licensing inquiries. The Virginia Department of Health advised that they did not have any licensing information on the address either.

Investigator Hulbert anonymously contacted Jewish Family services to inquire if they handled any aspect of Mr. Beckstedt's care. Investigator Hulbert was referred to the "PAM" department. He ended the phone call before being connected. The PAM department is Personal Affairs Management: Guardian and Conservators. This confirmed that Jewish Family services were appointed by the court to handle Mr. Beckstedt's affairs and they are responsible for placing him at 5304 Snowmass Court. Based upon his observations, Investigator Hulbert believes that the Virginia Department of Social Services – Adult Protective Services division should be contacted. He further believes that the City of Virginia Beach should be made aware of the exterior hazards

and other code violations. Furthermore, he ponders the possibility of potential insurance fraud based upon the number of residents and the level and quality of care being given.







 Apartments.com

## 5304 Snowmass Ct

5304 Snowmass Ct, Virginia Beach, VA 23464
Virginia Beach

🛡 Avoid Scams

 Houses / VA / Virginia Beach / 5304 Snowmass Ct

1/34



C 2 Weeks Ago

There are no available units.

| Br | Baths | # of Units | Avg Sq Ft | |
|----|-------|------------|-----------|---|






























10/19/2020

Jay M. Ambrose

To whom it may concern:

My name is Jay Ambrose and I'm a neighborhood friend of James and
Brock Beckstedt. Brock ask me to go and visit James Beckstedt at his
current home at 5304 Snowmass Court in Virginia Beach, Virginia on
date of October 02,2020 around 3 pm ,upon my visit brock and I notice a
red head make came out of main house and went to the add on two
story branch of the house and notice the red head male open a half
gallon of liquor and pour it into a traveling covered cup and therefore
proceeded back inside the main house. Brock mention that he believed
that was not appropriate at a care facility run by Jewish family services
and managed by department of human services Brock went on further
to say he worried about his safety and at this point he said he didn't
know whom to share this action with possibility of a retaliation against
his father and I agree.

Sincerely, Jay M. Ambrose

Daryl R. Rankin
NOTARY PUBLIC
Commonwealth of Virginia
Reg. # 7135097
My Commission Expires December 31, 2020

Daryl R. Rankin
NOTARY PUBLIC
Commonwealth of Virginia
Reg. # 7135097
My Commission Expires December 31, 2020

[Type the company name]





From Brock A Beckstedt

Bryans Paul Beckstedt

2018 - 2019

Div HSS of VA Beach, VA





by Brock Backstedt

2016 - 2018 ?

Bryan Paul Beckstedt & % VABCHVA DHSS

Date    10·30·2020                    by Brock Beckstodt

TO:   The Clerk of the Court (civil) of the United States
      District Eastern Division of Virginia

FROM:  Brock Beckstedt  U.S. Citizen  BORN Norfolk VA
       Current address  349 EAST ChickASAW Rd
       VA Beach, Virginia 23462

Subject   Notice of removal of STATE to Federal court
       ①  1.5 million TRUST estimated
       ②  I CAN Rebuttal all claims in the State action
          will be submitting All counter claims this week
          and the Edwards will be copy ford sent to
          opposing attorney of the State court action

                              Brock Andrew Beckstedt    10·30·20
                                            957 289 2725

VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH

CITY OF VIRGINIA BEACH,

       Petitioner,

v.                           CASE NO.  CL20-_*1881*_

James Paul Beckstedt,

       Respondent.

      SERVE: James Paul Beckstedt
            % Virginia Beach Circuit Court
            Virginia Beach, VA 23456

*Filed*
*3/3/2020*

## PETITION FOR EMERGENCY ADULT PROTECTIVE SERVICES

       COMES NOW, the Petitioner, the City of Virginia Beach, by and through its

Department of Human Services, Social Services Division - Adult Protective Services

Unit ("APS"), by counsel, pursuant to Virginia Code §§ 63.2-1609, petitions the Court for

an order authorizing the provision of adult protective services to and for James Paul

Beckstedt ("Respondent"), an adult for whom there is reason to suspect is in need of

adult protective services, for emergency treatment and/or placement, and the

appointment of an emergency temporary guardian and/or conservator for Respondent,

and for such other relief as set forth herein, in support thereof, states as follows:

       1.  On or about 2/28/2020, APS, located at 256 North Witchduck Rd., Ste. 1C &

1F, Virginia Beach, VA 23452, received a referral regarding Respondent, which reported

suspected self-neglect of a possibly incapacitated adult; the referral alleged that

Respondent, a 79 year old Virginia Beach resident, born 3/13/1940, with Neurocognitive

disorder with behavioral disturbance,  who reportedly needs assistance with certain

activities of daily living ("ADLs"), has displayed short term memory loss, poor frustration

tolerance, circumstantial thoughts, and irritability, and may be at risk for self-neglect and poor judgment in the community setting.

2.   Upon receipt of the referral, pursuant to Virginia Code §63.2-1605, DHS determined the report to be valid and began an investigation.

3.   Upon receipt of the current referral, APS learned that Respondent has been deemed unrestorably incompetent to stand trial for certain misdemeanor offenses, and it that appears questionable whether he can continue to live independently in the community as at times, the Respondent appears not oriented to time, place, or manner, and has been known to refuse treatment and assistance in the past.

4.   Respondent has been hospitalized twice at Eastern State hospital and the most recent report from Eastern, dated 2/3/2020, from Dr. Andrew Osborn, opines that Respondent should take medication which can slow his decline but that his neurocognitive disorder is not one that can be reversed and will continue to worsen, and as such, recommended Respondent be supervised in the community through City services.

5.   Prior to Dr. Osborn's report, in late January of 2020, Dr. Hasmukh Vyas, also of Eastern State, found Respondent to lack capacity to give informed consent, and as Respondent required treatment, the Williamsburg-James City General District Court issued a judicial authorization under Virginia Code Sec. 37.2-1101 for treatment of Respondent.

6.   Notwithstanding the foregoing, Respondent has recently been evaluated by Dr. Louis Leone, Medical Director for the City of Virginia Beach, and while Dr. Leone agreed the Respondent suffers from worsening neurocognitive disorder with behavioral

*Not true Lie*

disturbance, he found Respondent to be oriented to time, place, and manner, to be

aware of his circumstances and limitations, and able to give informed consent.  This

diagnosis was similar to the findings of Dr. Kevin Cuffee, the City's Adult Corrections/

Forensic Services Supervisor, who evaluated the Respondent during the last week of

February 2020.  Dr. Cuffee found the Respondent to be oriented to time, place, and

manner, and to be able to give informed consent.

      7.     Dr.(s) Leone and Cuffee's finings are similar to those of Dr. Brittany Bak.

Dr. Bak is also a physician at Eastern.  Her findings are noted in Dr. Osborn's report of

2/3/202; Dr. Osborn notes that in October of 2019, Dr. Bak found Respondent

competent and suggested redirection techniques, which appear to help Respondent in

overcoming some of his cognitive functioning impairments.  Dr. Osborn's report notes

further that as a result of Dr. Bak's findings, Respondent was expected to be able to

stand trial in the late fall / early winter of 2020. However, Dr. Osborn then notes that it

was alleged Respondent again decompensated and therefore was returned to Eastern

State on 1/8/2020, where he remained until early February.

      8.     It is apparent from the aforementioned reports, that Respondent is prone to

severe highs and severe lows in his cognitive functioning, and that Respondent's

fluctuations in cognitive functioning can vary from day to day and/or week to week.

      9.     Prior to Respondent's incarceration and hospitalizations, APS has had

previous referrals for self-neglect and financial exploitation with the Respondent as the

named victim. Past reports alleged that Respondent's home was cluttered, that he

lacked food, purposely turned off his water and heat, and refused to allow workers on

his property to verify concerns and/or have him evaluated. It was also alleged at one

time that Respondent's son, Brock Beckstedt, may have a power of attorney ("POA") over Respondent, and in or about 2018, used the POA to sell property of Respondent in Norfolk without Respondent's knowledge for below market value. Upon information and belief, the Respondent then refused to sell the property and the buyer sued to enforce the contract in Norfolk Circuit Court. During that proceeding, the Respondent was appointed a guardian *ad litem* due to concerns for his cognitive functioning.

     10.    Respondent is known to be widowed, and has the following known adult next of kin, his sons Brock Becksted, 349 East Chicksaw Rd., Virginia Beach, VA 23462, and Brian Beckstedt, who is a resident of an assisted living facility in Virginia Beach, VA.

     11.    As set forth above, Respondent's son Brock is alleged to hold a POA over Respondent. Upon information and belief, Brock Beckstedt is very much opposed to having any services imposed on Respondent, and believes the family can manage without any intervention. However, upon information and belief, Mr. Brock Beckstedt did recently indicate that he understood he may not be able to maintain Respondent in the home but would like to try.

     12.    It is clear that the Respondent is no longer able to live completely independently in the community and will at times, require varying levels of assistance, and that such level of care will increase as his symptoms increase. Because of the propensity for his condition to vary in extremes from one day to another, it is clear he needs to ensure he has access to assistance on a 24-7 basis, and thus an emergency exists in that it due to his condition, it cannot be said that he will be as lucid as he was during is 2/29/2020 evaluation with Dr. Leone and may, by next week, return to the condition reported by Dr. Osbourne on 2/3/2020.

13. It is also clear that the family is very tight knit, close, and loving, and upon information and belief, while Respondent and his son Brock have been at times, at odds, are for the most part very aligned and want to remain together without services. However, based on past referrals, it is anticipated that the family will refuse to allow service providers to enter the property and/or evaluate Respondent, and may not timely seek services necessary to ensure Respondent's welfare and/or that of his estate.

14. Colleen Dickerson, Esq., was Respondent's GAL in the Norfolk case and should be appointed as guardian ad *litem* in this and all subsequent proceedings to act on behalf of Respondent.

15. The Court should order an emergency protective order be issued on behalf of Respondent that appoints a temporary conservator and temporary limited guardian for Respondent, and should Brock Beckstedt produce a valid POA, pursuant to Virginia Code Sec. 64.201614, that POA should be suspended until further order of the Court.

16. Pursuant to Virginia Code Sec. 63.2-1605, the Court should order that APS should have unfettered access to Respondent wherever he may be fund, without interference from anyone, to meet with Respondent alone, to evaluate Respondent and his surroundings.

17. If the Court finds the same necessary, the Court should also order that a petition for a permanent conservator and limited guardian be filed and scheduled prior to, or as soon as possible after the expiration of, the temporary order, so as to ensure that Respondent has someone to perpetually act on his behalf.

WHEREFORE, the City of Virginia Beach, by counsel, hereby petitions the Court for leave, pursuant to Virginia Code § § 63.2-1609, for the provision of emergency adult protective services and for the appointment of a temporary limited guardian and full conservator for 15 days for Respondent, that the guardian and conservator, at minimum,  be authorized to authorize any treatment, care, service, including but not limited to, a change in housing or placement, hospitalization, nursing care, medication management, visitation requirements, have access to any accounts, funds, and assets, and/or arrange for any other service or treatment related to preserve the welfare of Respondent and his estate, to issue an access order as set forth above, to suspend any POA held by Brock Beckstedt, and for other such relief as this court shall so require.

CITY OF VIRGINIA BEACH,

By: _____
              Of Counsel

Mark D. Stiles
City Attorney
Christianna Dougherty-Cunningham
Associate City Attorney
Joesph Kurt
Assistant City Attorney
Office of the City Attorney
2401 Courthouse Drive, Ste. 260
Virginia Beach, VA 23456
757-385-4531-phone
757-385-5687-fax

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was mailed and/or faxed and/or hand delivered to the following on this day, 2nd of Mar, 2020:

James Paul Beckstedt
Brock Beckstedt
Colleen Dickerson, Esq.
Dr. Louis Leone/Dr. Kevin Cuffee

_____
Associate City Attorney

CITY OF VIRGINIA BEACH,

By _____
            Of Counsel

Mark D. Stiles, Esq.
City Attorney
Christianna Dougherty-Cunningham, Esq.
Associate City Attorney
Joseph Kurt
Assistant City Attorney
Office of the City Attorney
Municipal Center, Building 1
2401 Courthouse Drive, Suite 260
Virginia Beach, Virginia 23456
(757) 385-4531 Phone
(757) 385-5687 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on the __4th__ day of __March__ 20_20_, a true copy of the foregoing Petition was sent by first-class mail to the following:

James Beckstedt
349 East Chickasaw Rd
Virginia Beach, VA 23462

James Beckstedt
c/o Jewish Family Service of Tidewater, Inc.
5000 Corporate Woods Dr., Suite 300
Virginia Beach, VA  23462

Brock Beckstedt
9543 Capitol Ave,
Norfolk, VA 23503

Bryan Beckstedt
c/o Kentucky Ave ICF Group Home
145 South Kentucky Avenue
Virginia Beach, VA 23452

Dr. Louis Leone
258 N. Witchduck Rd.
Virginia Beach, VA 23462

VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH

CITY OF VIRGINIA BEACH,

      Petitioner,

v.                              CASE NO.  CL20- _1881_

JAMES PAUL BECKSTEDT,

      Respondent.

## ORDER FOR EMERGENCY ADULT PROTECTIVE SERVICES

THIS DAY CAME the Petitioner, the City of Virginia Beach, by and through its Department of Human Services, Social Services Division-Adult Protective Services Unit ("APS"), by counsel, pursuant to Virginia Code §§ 63.2-1605 & 1609, upon its petition filed with the Court for on-going access to, and an order authorizing the provision of adult protective services to and for, James Paul Beckstedt ("Respondent"), an adult for whom there is reason to suspect is in need of adult protective services, for emergency treatment, and the appointment of an emergency temporary guardian for Respondent, and to continue to permit DHS to have entry into any location where Respondent may now reside and/or be found, and if necessary, pursuant to Virginia Code Sec. 64.2-1614 to suspend that power of attorney ("POA") held by Brock Beckstedt, and was argued,

WHEREAS, before the Court was the Petitioner, DHS, by counsel and by representatives of DHS, along with Colleen Dickerson, Esq., guardian *ad litem* for Respondent ("GAL"), *Respondent, and* Respondent's son, Brock Beckstedt, and appeared before the Court, on an emergency basis; and

3/2/2020

1 of 10

IT APPEARING that based upon representations of the GAL, counsel for the City, and testimony under oath of representatives of DHS, Respondent is the subject of an adult protective service referral, which report suspected self-neglect of Respondent; and

IT FURTHER APPEARING that the referral alleged that Respondent is a 79 year old Virginia Beach resident, born 3/13/1940, with Neurocognitive disorder with behavioral disturbance, who reportedly needs assistance with certain activities of daily living ("ADLs"), has displayed short term memory loss, poor frustration tolerance, circumstantial thoughts, and irritability, and may be at risk for self-neglect and poor judgment in the community setting; and

IT FURTHER APPEARING that APS learned that Respondent has been deemed unrestorably incompetent to stand trial for certain misdemeanor offenses, and it that appears questionable whether he can continue to live independently in the community as at times, the Respondent appears not oriented to time, place, or manner, and has been known to refuse treatment and assistance in the past; and

IT FURTHER APPEARING that Respondent has been hospitalized twice at Eastern State hospital and the most recent report from Eastern State, dated 2/3/2020, from Dr. Andrew Osborn, opines that Respondent should take medication which can slow his decline but that his neurocognitive disorder is not one that can be reversed and will continue to worsen, and as such, recommended Respondent be supervised in the community through City services; and

IT FURTHER APPEARING that prior to Dr. Osborn's report, in late January of 2020, Dr. Hasmukh Vyas, also of Eastern State, found Respondent to lack capacity to give informed consent, and as Respondent required treatment, the Williamsburg-James

3/2/2020

2

City General District Court issued a judicial authorization under Virginia Code Sec.

37.2-1101 for treatment of Respondent; and *Son Brock Beckstedt was Not informed until AFTER This Action*

IT FURTHER APPEARING that notwithstanding the foregoing, Respondent has

recently been evaluated by Dr. Louis Leone, Medical Director for the City of Virginia

Beach, and while Dr. Leone agreed the Respondent suffers from worsening *at the time of the evaluation.*

neurocognitive disorder with behavioral disturbance, he found Respondent to be

oriented to time, place, and manner, to be aware of his circumstances and limitations,

and able to give informed consent; and *① that respondents with the acknowledgement, condition is fluid and subject to periods of incapacity and incompetence at any time, that the*

IT FURTHER APPEARING that Dr. Leone's diagnosis was similar to the findings *condition is chronic irreversible degenerative and time will worsen.*

of Dr. Kevin Cuffee, the City's Adult Corrections/Forensic Services Supervisor, who

evaluated the Respondent during the last week of February 2020, and also found the

Respondent to be oriented to time, place, and manner, and to be able to give informed

consent; and

IT FURTHER APPEARING that Dr.(s) Leone and Cuffee's findings are similar to

those of Dr. Brittany Bak, also a physician at Eastern State, who in October of 2019,

found Respondent competent and suggested redirection techniques, which appear to

help Respondent in overcoming some of his cognitive functioning impairments; and

IT FURTHER APPEARING that as a result of Dr. Bak's findings, Respondent was

expected to be able to stand trial in the late fall / early winter of 2020, however,

Respondent again decompensated and was returned to Eastern State on 1/8/2020,

where he remained until early February and deemed unrestorably incompetent; and

IT FURTHER APPEARING that is apparent from the aforementioned reports, that

Respondent is prone to severe highs and severe lows in his cognitive functioning, and

3

that Respondent's fluctuations in cognitive functioning can vary from day to day and/or week to week; and

IT FURTHER APPEARING that prior to Respondent's incarceration and hospitalizations, APS has had previous referrals for self-neglect and financial exploitation with the Respondent as the named victim; and

IT FURTHER APPEARING that past APS reports alleged that Respondent's home was cluttered, that he lacked food, purposely turned off his water and heat, and refused to allow workers on his property to verify concerns and/or have him evaluated; and

IT FURTHER APPEARING that it was also alleged at one time that Respondent's son, Brock Beckstedt, may have a power of attorney ("POA") over Respondent, and in or about 2018, used the POA to sell property of Respondent in Norfolk without Respondent's knowledge, for below market value; and   *← Lies I CAN prove Them other Wis*

*✳* IT FURTHER APPEARING that Respondent then refused to sell the property and the buyer sued to enforce the contract in Norfolk Circuit Court, and during that proceeding, the Respondent was appointed a guardian *ad litem* due to concerns for Respondent's cognitive functioning; and   *This happen somewhat before the last paragraph which is all wron and I can prove it[?]*

IT FURTHER APPEARING that Respondent is known to be widowed, and has the following known adult next of kin, his sons Brock Becksted, ~~349 East Chicksaw Rd.,~~ *9543 Capitol Ave.* ~~Virginia Beach, VA 23462,~~ *Norfolk, VA 23503, ✳* and Brian Beckstedt, who intellectually disabled and is a resident of an assisted living facility in Virginia Beach, VA; and

IT FURTHER APPEARING that Respondent's son Brock is alleged to hold a POA over Respondent, and despite physician's recommendations, is openly opposed to

*✳ 3/2/2020*

*4*

*✳ Footnote this paragraph happen [for]-4 after Dismissal of R.E contract*

*✳ Bryan has been found to have [?] on Dress-1 Burtmic Marks a [?]*

*I [?] [?]*

having any services imposed on Respondent, and believes the family can manage

~~without any intervention; and~~

      IT FURTHER APPEARING that it is clear to the Court that the Respondent is no

longer able to live completely independently in the community and will at times, require

~~varying levels of assistance, and that such level of care will increase as his symptoms~~

increase, and because of the propensity for his condition to vary in extremes from one

~~day to another, it is clear Respondent needs to ensure he has access to assistance on a~~

24-7 basis; and

      IT FURTHER APPEARING that based past APS referrals as well as the Court's

~~own observations of the family in Court, it is likely that the family will refuse~~ to allow

service providers to enter the property and/or evaluate Respondent, and may not timely

seek services necessary to ensure Respondent's welfare and/or that of his estate; and

      IT FURTHER APPEARING that while Respondent has some level of capacity to

give informed consent and manage his affairs, at times he lacks the ability to give

~~informed consent and manage his affairs, and the same is as a direct result of his~~

condition which will only worsen in the future, and thus Respondent is individual for

whom a real emergency exists, and that there is a compelling reason to enter an order

~~consistent with ensuring his welfare; and~~

      IT FURTHER APPEARING that Jewish Family Service of Tidewater, Inc., located

~~at 5000 Corporate Woods Drive, Ste. 300, Virginia Beach, VA 23464 ("JFS") should be~~

appointed as temporary conservator for Respondent and temporary limited guardian for

Respondent; and

IT FURTHER APPEARING that given the urgency of the Respondent's condition, the 24 notice requirement should be waived as Respondent and Respondent's son Brock were personally notified of the possibility of this order by the Court itself on 2/28/2020; and *No this is untrue testalieing in writing for Matt*

~~IT FURTHER APPEARING the GAL is in agreement with JFS being so appointed~~ herein; and

~~IT FURTHER APPEARING that DHS and the GAL should continue to have~~ unfettered access to Respondent, wherever he may be located, and for other good cause shown,

It is hereby ADJUDGED, ORDERED, and DECREED that this Court FINDS that the Respondent has a level of incapacity warranting action on his behalf, that an emergency exists, that the Respondent at times lacks the capacity to consent to receive adult protective services, and that this order is substantially supported by the findings of DHS and the GAL that have investigated the case, and that there are compelling reasons for ordering services; and

IT IS FURTHER hereby ADJUDGED, ORDERED AND DECREED that JFS is appointed as temporary conservator for Respondent and temporary limited guardian for ~~Respondent and the term of JFS' appointment shall be for 15 calendar days from the date of its qualification; and~~

IT IS FURTHER hereby ADJUDGED, ORDERED AND DECREED that in its ~~capacity as temporary conservator, JFS shall have all of those powers as set forth in~~ Virginia Code §64.2-2021 and §64.2-2022, and additionally, shall have access to all lock

*They Already Done This*

*3/2/2020*

6

boxes, safety deposit boxes, bank accounts, investments, and brokerage accounts whether jointly or solely owned by the Respondent; and

IT IS FURTHER hereby ADJUDGED, ORDERED AND DECREED that JFS as temporary limited guardian shall only have the following powers as set forth as follows:

1.) JFS shall consent to and facilitate Respondent being evaluated for some level of assisted living and if such evaluator finds Respondent in need of assisted living, JFS shall ensure Respondent receives the appropriate level of assistance whether in the home or in a proper out of home placement, and as such, if necessary, the Court hereby approves a change of residence only under these conditions; and

2.) JFS shall ensure Respondent is connected with a primary care physician and a neurologist, evaluated by the same, and ensure that Respondent follows through with any recommended medication management regimen; and

3.) JFS shall ensure that Respondent is living in a safe and clean environment, with running water and electricity, and if his current home is not to up to those standards, may approve alternative placement and as such, if necessary, the Court hereby approves a change of residence only under these conditions; and

4.) JFS shall only approve medical treatment or other decisions, not enunciated above, requiring informed consent on behalf of Respondent, where a licensed physician and/or psychiatrist, psychologist, or other competent licensed medical professional indicates to JFS that Respondent is, at the time needed for the decision, not presently able to give informed consent and/or is not oriented to time, place, and manner; and

IT IS FURTHER hereby ADJUDGED, ORDERED AND DECREED that the POA held by Brock Beckstedt is suspended until further order of this Court ; and

- footnote
? Respondent
is the Respondent
has no capacity?

5—
3/2/2020

?

IT IS FURTHER hereby ADJUDGED, ORDERED, and DECREED that JFS,

DHS, and the GAL shall have unfettered entry rights into any residence or facility where

Respondent is residing or present, to have access to Respondent for the purpose of

interview, evaluation, treatment, and the provision of adult protective services, and that

if deemed necessary by DHS, JFS, or the GAL, at the time of interview, to speak with

Respondent, privately and in confidence, and without interference from other people,

including but not limited to Brock Beckstedt; and   ?

IT IS FURTHER hereby ADJUDGED, ORDERED and DECREED that before

acting as **guardian** for Respondent, JFS shall enter into and execute a bond, for faithful

performance of its duties, ~~without surety,~~ before the Clerk of this Court, in the sum and

penalty of $ _1,000⁰⁰_ ; and   *5* 3/2/2020   ? Don't understand. (BB)

IT IS FURTHER hereby ADJUDGED, ORDERED and DECREED that before

acting as **conservator** for the Estate of Respondent, JFS shall enter into and execute a

bond, for faithful performance of its duties, **with corporate surety,** before the Clerk of

this Court, in the sum and penalty of $ _25,000⁰⁰_ ; and   *5* 3/2/2020

IT IS FURTHER hereby ADJUDGED, ORDERED and DECREED that given the

Respondent's condition and his present situation, and the fact the Respondent and his

son Brock were notified of the possibility of this order by the Court more than 24 hours

in advance, the formal 24 written notice requirement is waived; and   Did not happen
Just now I read this Now (BB)

It is further hereby ADJUDGED, ORDERED, and DECREED that JFS shall

submit to the Court a report ("Report") memorializing all services authorized on behalf of

Respondent during its time of appointment, describing the circumstances thereof, and

including the name, place, date and nature of the services provided, and the report shall

*5* 3/2/2020

8

become part of the Court record, and shall be confidential and open only to such persons as may be directed by the Court in subsequent order; and

It is further hereby ADJUDGED, ORDERED, and DECREED that this Order shall remain in effect for 15 days from the date of JFS qualification ("Effective Time") and JFS' Report shall be filed with the Court no later than 2 business days after the expiration of this Order; and

It is further hereby ADJUDGED, ORDERED, and DECREED that within, and before the expiration of, the Effective Time, the parties shall determine whether DHS should immediately petition the Court to appoint a permanent limited guardian and permanent conservator pursuant to Virginia Code §64.2-2000 et. seq., and the parties shall obtain a duty date for the purpose of entering another temporary order pending a full contested guardian and conservatorship trial.

ENTER:   this day the 2ᵈ of March 2020.

_____
Judge

CERTIFIED TO BE A TRUE COPY
OF RECORD IN MY CUSTODY
TINA E. SINNEN, CLERK
CIRCUIT COURT, VIRGINIA BEACH, VA
BY _____
DEPUTY CLERK

**[ ENDORSEMENT PAGE TO FOLLOW ]**

Any person appointed guardian or conservator of an estate must qualify before the Clerk of this Court before administering the estate.

9
3/2/2020

**I ASK FOR THIS:**

City Attorney

**SEEN AND AGREED:**

Guardian *ad litem* for Respondent

**SEEN AND AGREED:**

JFS

**SEEN AND** ~~objected~~

~~Enforcement~~ waived in open Court.

**Brock Beckstedt**

3/2/2020

10 of 10.
3/2/2020

VIRGINIA:  IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

CITY OF VIRGINIA BEACH,

                        Petitioner,
v.

                                        CASE NO. CL20-1881

JAMES BECKSTEDT, et. al.

                        Respondents.

## **AFFIDAVIT**

I, Christianna Dougherty-Cunningham, being first duly sworn, depose and state

that upon information and belief, the Estate of the Respondent, JAMES BECKSTEDT, is

unavailable, and therefore costs and fees of this proceeding need to be borne by the

Commonwealth pursuant to Virginia Code § 64.2-2008 until such time as they are

deemed available.

_____
Christianna Dougherty-Cunningham


Subscribed and sworn to before me, a Notary Public, by Christianna Dougherty-Cunningham, on this 4th day of _____March_____, 2020.

_____
Patricia Jackson, Notary Public

My Commission Expires: 7692226
Notary Registration No.: 4/30/2020

Patricia Delores Jackson
Notary Public
Commonwealth of Virginia
Registration #7692226
Expires April 30, 2020

VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH

CITY OF VIRGINIA BEACH,

      Petitioner,

v.                         CASE NO. CL20-_*1881*_

JAMES PAUL BECKSTEDT,

      Respondent.

## ORDER FOR EMERGENCY ADULT PROTECTIVE SERVICES

THIS DAY CAME the Petitioner, the City of Virginia Beach, by and through its Department of Human Services, Social Services Division-Adult Protective Services Unit ("APS"), by counsel, pursuant to Virginia Code §§ 63.2-1605 & 1609, upon its petition filed with the Court for on-going access to, and an order authorizing the provision of adult protective services to and for, James Paul Beckstedt ("Respondent"), an adult for whom there is reason to suspect is in need of adult protective services, for emergency treatment, and the appointment of an emergency temporary guardian for Respondent, and to continue to permit DHS to have entry into any location where Respondent may now reside and/or be found, and if necessary, pursuant to Virginia Code Sec. 64.2-1614 to suspend that power of attorney ("POA") held by Brock Beckstedt, and was argued,

WHEREAS, before the Court was the Petitioner, DHS, by counsel and by representatives of DHS, along with Colleen Dickerson, Esq., guardian *ad litem* for Respondent, and
Respondent ("GAL"), Respondent's son, Brock Beckstedt, and appeared before the Court, on an emergency basis; and

3/2/2020

1 of 10

IT APPEARING that based upon representations of the GAL, counsel for the City, and testimony under oath of representatives of DHS, Respondent is the subject of an adult protective service referral, which report suspected self-neglect of Respondent; and

IT FURTHER APPEARING that the referral alleged that Respondent is a 79 year old Virginia Beach resident, born 3/13/1940, with Neurocognitive disorder with behavioral disturbance, who reportedly needs assistance with certain activities of daily living ("ADLs"), has displayed short term memory loss, poor frustration tolerance, circumstantial thoughts, and irritability, and may be at risk for self-neglect and poor judgment in the community setting; and

IT FURTHER APPEARING that APS learned that Respondent has been deemed unrestorably incompetent to stand trial for certain misdemeanor offenses, and it that appears questionable whether he can continue to live independently in the community as at times, the Respondent appears not oriented to time, place, or manner, and has been known to refuse treatment and assistance in the past; and

IT FURTHER APPEARING that Respondent has been hospitalized twice at Eastern State hospital and the most recent report from Eastern State, dated 2/3/2020, from Dr. Andrew Osborn, opines that Respondent should take medication which can slow his decline but that his neurocognitive disorder is not one that can be reversed and will continue to worsen, and as such, recommended Respondent be supervised in the community through City services; and

IT FURTHER APPEARING that prior to Dr. Osborn's report, in late January of 2020, Dr. Hasmukh Vyas, also of Eastern State, found Respondent to lack capacity to give informed consent, and as Respondent required treatment, the Williamsburg-James

3/2/2020

2

City General District Court issued a judicial authorization under Virginia Code Sec.

37.2-1101 for treatment of Respondent; and *Son Brock Beckstedt was not informed until After This Action*

IT FURTHER APPEARING that notwithstanding the foregoing, Respondent has *see*

recently been evaluated by Dr. Louis Leone, Medical Director for the City of Virginia

Beach, and while Dr. Leone agreed the Respondent suffers from worsening *at the time of the*

neurocognitive disorder with behavioral disturbance, he found Respondent to be *evaluation*

oriented to time, place, and manner, to be aware of his circumstances and limitations,

and able to give informed consent; and *that respondents condition is fluid and subject to periods of incompetence and incompetence at any time, that it*

IT FURTHER APPEARING that Dr. Leone's diagnosis was similar to the findings

of Dr. Kevin Cuffee, the City's Adult Corrections/Forensic Services Supervisor, who

evaluated the Respondent during the last week of February 2020, and also found the

Respondent to be oriented to time, place, and manner, and to be able to give informed

consent; and

IT FURTHER APPEARING that Dr.(s) Leone and Cuffee's findings are similar to

those of Dr. Brittany Bak, also a physician at Eastern State, who in October of 2019,

found Respondent competent and suggested redirection techniques, which appear to

help Respondent in overcoming some of his cognitive functioning impairments; and

IT FURTHER APPEARING that as a result of Dr. Bak's findings, Respondent was

expected to be able to stand trial in the late fall / early winter of 2020, however,

Respondent again decompensated and was returned to Eastern State on 1/8/2020,

where he remained until early February and deemed unrestorably incompetent; and

IT FURTHER APPEARING that is apparent from the aforementioned reports, that

Respondent is prone to severe highs and severe lows in his cognitive functioning, and

3

that Respondent's fluctuations in cognitive functioning can vary from day to day and/or week to week; and

IT FURTHER APPEARING that prior to Respondent's incarceration and hospitalizations, APS has had previous referrals for self-neglect and financial exploitation with the Respondent as the named victim; and

IT FURTHER APPEARING that past APS reports alleged that Respondent's home was cluttered, that he lacked food, purposely turned off his water and heat, and refused to allow workers on his property to verify concerns and/or have him evaluated; and

IT FURTHER APPEARING that it was also alleged at one time that Respondent's son, Brock Beckstedt, may have a power of attorney ("POA") over Respondent, and in or about 2018, used the POA to sell property of Respondent in Norfolk without Respondent's knowledge, for below market value; and *← Lies I can prove them other wise*

*✴* IT FURTHER APPEARING that Respondent then refused to sell the property and the buyer sued to enforce the contract in Norfolk Circuit Court, and during that proceeding, the Respondent was appointed a guardian *ad litem* due to concerns for Respondent's cognitive functioning; and *this happen somewhat before the last paragraph which is all wrong and I can prove it*

IT FURTHER APPEARING that Respondent is known to be widowed, and has the following known adult next of kin, his sons Brock Becksted, 349 East Chicksaw Rd., *9543 Capitol Ave.* *Norfolk, VA 23503,* Virginia Beach, VA 23462, and *✴* Brian Beckstedt, who intellectually disabled and is a resident of an assisted living facility in Virginia Beach, VA; and

IT FURTHER APPEARING that Respondent's son Brock is alleged to hold a POA over Respondent, and despite physician's recommendations, is openly opposed to

*✴ ⁵/₃/2020*

*4*

*✴ Brian has been found to have ... on ...*

*✴ Footnote this paragraph happen ...*

*This statement false*

having any services imposed on Respondent, and believes the family can manage

~~without any intervention; and~~

IT FURTHER APPEARING that it is clear to the Court that the Respondent is no

longer able to live completely independently in the community and will at times, require

~~varying levels of assistance, and that such level of care will increase as his symptoms~~

increase, and because of the propensity for his condition to vary in extremes from one

~~day to another, it is clear Respondent needs to ensure he has access to assistance on a~~

24-7 basis; and

IT FURTHER APPEARING that based past APS referrals as well as the <u>Court's</u>

~~own observations of the family in Court, it is likely that the family will refuse to allow~~

service providers to enter the property and/or evaluate Respondent, and may not timely

~~seek services necessary to ensure Respondent's welfare and/or that of his estate;~~ and

✗ IT FURTHER APPEARING that while Respondent has some level of capacity to

give informed consent and manage his affairs, at times he lacks the ability to give

~~informed consent and manage his affairs, and the same is as a direct result of his~~

condition which will only worsen in the future, and thus Respondent is individual for

whom a real emergency exists, and that there is a compelling reason to enter an order

~~consistent with ensuring his welfare; and~~

IT FURTHER APPEARING that Jewish Family Service of Tidewater, Inc., located

~~at 5000 Corporate Woods Drive, Ste. 300, Virginia Beach, VA 23464 ("JFS") should be~~

appointed as temporary conservator for Respondent and temporary limited guardian for

Respondent; and

*(handwritten margin and footnotes, partially legible)*

Foot Notes:
✻ it says early B+ MANY
And myself
No capacity
to make informed
decisions for himself

3/2/2020

IT FURTHER APPEARING that given the urgency of the Respondent's condition,

the 24 notice requirement should be waived as Respondent and Respondent's son

Brock were personally notified of the possibility of this order by the Court itself on

2/28/2020; and   *No this is untrue testafying in writing BR/NETT*

IT FURTHER APPEARING the GAL is in agreement with JFS being so appointed

herein; and

IT FURTHER APPEARING that DHS and the GAL should continue to have

unfettered access to Respondent, wherever he may be located, and for other good

cause shown,

It is hereby ADJUDGED, ORDERED, and DECREED that this Court FINDS that

the Respondent has a level of incapacity warranting action on his behalf, that an

emergency exists, that the Respondent at times lacks the capacity to consent to receive

adult protective services, and that this order is substantially supported by the findings of

DHS and the GAL that have investigated the case, and that there are compelling

reasons for ordering services; and

IT IS FURTHER hereby ADJUDGED, ORDERED AND DECREED that JFS is

appointed as temporary conservator for Respondent and temporary limited guardian for

Respondent and the term of JFS' appointment shall be for 15 calendar days from the

date of its qualification; and

IT IS FURTHER hereby ADJUDGED, ORDERED AND DECREED that in its

capacity as temporary conservator, JFS shall have all of those powers as set forth in

Virginia Code §64.2-2021 and §64.2-2022, and additionally, shall have access to all lock

*They Already Done this*
*3/2/2020*

6

boxes, safety deposit boxes, bank accounts, investments, and brokerage accounts

~~whether jointly or solely owned by the Respondent; and~~

IT IS FURTHER hereby ADJUDGED, ORDERED AND DECREED that JFS as temporary limited guardian shall only have the following powers as set forth as follows:

~~1.) JFS shall consent to and facilitate Respondent being evaluated for some level~~ of assisted living and if such evaluator finds Respondent in need of assisted living, JFS ~~shall ensure Respondent receives the appropriate level of assistance whether in the~~ home or in a proper out of home placement, and as such, if necessary, the Court hereby approves a change of residence only under these conditions; and

~~2.) JFS shall ensure Respondent is connected with a primary care physician and~~ a neurologist, evaluated by the same, and ensure that Respondent follows through with ~~any recommended medication management regimen; and~~

3.) JFS shall ensure that Respondent is living in a safe and clean environment, with running water and electricity, and if his current home is not to up to those standards, may approve alternative placement and as such, if necessary, the Court hereby approves a change of residence only under these conditions; and

4.) JFS shall only approve medical treatment or other decisions, not enunciated ~~above, requiring informed consent on behalf of Respondent, where a licensed physician~~ and/or psychiatrist, psychologist, or other competent licensed medical professional ~~indicates to JFS that Respondent is, at the time needed for the decision, not presently~~ able to give informed consent and/or is not oriented to time, place, and manner; and

IT IS FURTHER hereby ADJUDGED, ORDERED AND DECREED that the POA ~~held by Brock Beckstedt is suspended until further order of this Court ; and~~

*[handwritten: - Footnote? Respondent is the Respondent has no capacity?]*

*[handwritten: S← 3/2/2020]*

*[handwritten: 7]*

IT IS FURTHER hereby ADJUDGED, ORDERED, and DECREED that JFS,

~~DHS, and the GAL shall have unfettered entry rights into any residence or facility where~~

Respondent is residing or present, to have access to Respondent for the purpose of

interview, evaluation, treatment, and the provision of adult protective services, and that

~~if deemed necessary by DHS, JFS, or the GAL, at the time of interview,~~ to speak with

Respondent, privately and in confidence, and without interference from other people,

~~including but not limited to Brock Beckstedt; and~~ ?

IT IS FURTHER hereby ADJUDGED, ORDERED and DECREED that before

acting as **guardian** for Respondent, JFS shall enter into and execute a bond, for faithful

~~performance of its duties, without surety, before the Clerk of this Court, in the sum and~~

penalty of $ _1,000.00_ ; and   ⁵⁄₃/₂/₂₀₂₀   ? Don't understand (BB)

IT IS FURTHER hereby ADJUDGED, ORDERED and DECREED ~~that before~~

acting as **conservator** for the Estate of Respondent, JFS shall enter into and execute a

bond, for faithful performance of its duties, **with ~~corporate~~ surety,** before the Clerk of

~~this Court, in the sum and penalty of $~~ _25,000.00_ ~~; and~~   ⁵⁄₃/₂/₂₀₂₀

IT IS FURTHER hereby ADJUDGED, ORDERED and DECREED that given the

Respondent's condition and his present situation, and the fact the Respondent and his

son Brock were notified of the possibility of this order by the Court more than 24 hours

in advance, the formal 24 written notice requirement is waived; and   Did not happen
JUST NOW I read
this Neil (BB)

It is further hereby ADJUDGED, ORDERED, and DECREED that JFS shall

submit to the Court a report ("Report") memorializing all services authorized on behalf of

Respondent during its time of appointment, describing the circumstances thereof, and

including the name, place, date and nature of the services provided, and the report shall

⁵⁄₃/₂/₂₀₂₀

8

become part of the Court record, and shall be confidential and open only to such

persons as may be directed by the Court in subsequent order; and

It is further hereby ADJUDGED, ORDERED, and DECREED that this Order shall

remain in effect for 15 days from the date of JFS qualification ("Effective Time") and JFS'

~~Report shall be filed with the Court no later than 2 business days after the expiration of~~

this Order; and

It is further hereby ADJUDGED, ORDERED, and DECREED that within, and

~~before the expiration of, the Effective Time, the parties shall determine whether DHS~~

should immediately petition the Court to appoint a permanent limited guardian and

permanent conservator pursuant to Virginia Code §64.2-2000 et. seq., and the parties

shall obtain a duty date for the purpose of entering another temporary order pending a

full contested guardian and conservatorship trial.

ENTER:   this day the 2 of March 2020.

_____
Judge

CERTIFIED TO BE A TRUE COPY
OF RECORD IN MY CUSTODY
TINA E. SINNEN, CLERK
CIRCUIT COURT, VIRGINIA BEACH, VA
BY _____
DEPUTY CLERK

**[ ENDORSEMENT PAGE TO FOLLOW ]**

Any person appointed guardian or
conservator of an estate must
qualify before the Clerk of this
Court before administering the estate.

9
3/2/2020

I ASK FOR THIS:

City Attorney

SEEN AND AGREED:

Guardian *ad litem* for Respondent

SEEN AND AGREED:

JFS

SEEN AND ~~Objected~~

~~Enforcement~~ waived in open Court.

Brock Beckstedt

3/2/2020

VIRGINIA:  IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

CITY OF VIRGINIA BEACH,

                           Petitioner,

v.

                                         CASE NO. CL20-1881

JAMES BECKSTEDT, et.al.,

                     Respondents.

## **FEE ORDER**

Upon representation of Petitioner, under oath, that the Estate of JAMES BECKSTEDT, is unavailable, and as such service fees and court costs are HEREBY WAIVED pursuant to § 64.2-2008 of the Code of Virginia; and

It is ORDERED that when a guardian is appointed and/or protective order is entered appointing a conservator and if the Estate of JAMES BECKSTEDT is found to be available and sufficient therefore, the Court and parties owed costs from this proceeding, including but not limited to, the guardian *ad litem* appointed herein, shall be reimbursed from the Estate of JAMES BECKSTEDT for all costs and fees; and

It is further ORDERED that if the Estate of JAMES BECKSTEDT is found not to be sufficient to cover all costs associated herewith, the Commonwealth shall bear all costs, including but not limited to any guardian *ad litem* fees, of the same; and

It is further ORDERED that if a guardian or conservator is not appointed, but the Court finds that the Petition is brought in good faith and for the benefit of Respondent, JAMES BECKSTEDT, the Court may direct Mr. Beckstedet estate, if available and

VIRGINIA:  IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

CITY OF VIRGINIA BEACH,

                    Petitioner,

v.

                                        CASE NO. CL20-1881

James Beckstedt,

and

Brock Beckstedt

                    Respondents.

Serve:        James Beckstedt
              349 East Chickasaw Rd
              Virginia Beach, VA 23462

              and

              James Beckstedt
              c/o  JFS
              5000  Corporate Woods Dr., Ste. 300
              Virginia Beach, VA 23462

              and

              Brock Beckstedt
              9543 Capitol Ave,
              Norfolk, VA 23503

## **PETITION**

COMES NOW the Petitioner, the City of Virginia Beach, through its Department of

Human Services, Adult Protective Services Unit ("DHS"), by counsel, and pursuant to

Virginia Code §64.2-2000 *et seq.*, moves this Court for entry of an Order appointing a

limited guardian and for the entry of a Protective Order appointing a conservator for

James Beckstedt ("Respondent"), as well as pursuant to Virginia Code §64.2-1614, to

1

VIRGINIA:  IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

CITY OF VIRGINIA BEACH,

                            Petitioner,

v.

                                           CASE NO.: CL20-1881

JAMES BECKSTEDT, et. al.

                            Respondents.

## GUARDIAN AD LITEM ORDER

**THIS DAY** came the Virginia Beach Department of Human Services, Social Services Division, by counsel, and represented to this Court that it has now filed a petition for the appointment of permanent limited guardian and/or the entry of a Protective Order for the appointment of a permanent conservator for **JAMES BECKSTEDT**  pursuant to §§ 64.2-2000 et seq. of the Code of Virginia, ("Petition"); and

It appearing to the Court that the statutes require an appointment of a guardian *ad litem* before a hearing can be held on the Petition, and it appearing that this Court has already appointed a guardian ad litem under Virginia Code §63.2-1609, it is therefore

ADJUDGED, ORDERED, and DECREED that COLLEEN DICKERSON, ESQ. , a discreet and competent attorney at law practicing before the bar of this court, be and hereby is appointed as guardian *ad litem* in this additional proceeding to represent, protect, and defend the interest of **JAMES BECKSTEDT**  and to perform all other duties pursuant to §§ 64.2-2000 et seq. in a subsequent proceeding for appointment of a Guardian and the entry of a Protective Order, including but not limited to, verification of whether Virginia is a home state and/or state with significant contact, such that the jurisdictional requirements of Virginia Code §§64.2-2105 et. seq. have been met.

                            ENTER:  This day, the _____ of _____, 2020.

                                                         _____
                                                              Judge

a bank, for any purpose; to mortgage or pledge such portion of the Respondent's estate as may be required to secure such loan or loans; and, as maker or endorser, to renew existing loans; and

        (h)    To comply with the following court ordered requirements prior to the conveyance of any interest in real estate, including, but not limited to, (i) increasing the amount of the conservator's bond, (ii) securing an appraisal of the real estate or interest, (iii) giving notice to interested parties as the court deems proper and (iv) consultation with the Commissioner of Accounts and, if one has been appointed, with the guardian, (v) providing a report of compliance with each requirement, to be filed with the Commissioner of Accounts, (vi) and requiring the use of a common source information company, as defined in Virginia Code §54.1-2130, when listing the property.

      26.    In the event of any conveyance requiring the named conservator to comply with the requirements set forth in 25(h) above, DHS requests that promptly following receipt of such conservator's report, the Commissioner shall file a report with the Court indicating whether the requirements imposed have been met and whether the sale is otherwise consistent with the conservator's duties, and that any such conveyance shall not be closed until a report by the Commissioner of Accounts is filed with the Court and confirmed as provided in Virginia Code §64.2-1212, §64.2-1213, and §64.2-1214.

      27.    In order for JFS to act autonomously, that POA held by Brock Beckstedt should be revoked.

      28.    Respondent should have a guardian *ad litem* appointed to represent his interests.

10

29.     Upon information and belief, although Respondent's attendance at a hearing in this matter would not be detrimental to his health, care, and safety, and due to his behavioral health issues, his attendance should not be required by the Court.

30.     As Respondent should be considered not indigent, and this petition brought in good faith and for the benefit of Respondent, all costs expended herein, including but not limited to those for the guardian *ad litem* should be borne by his Estate.

WHEREFORE, the City of Virginia Beach, through its Department of Human Services, prays that the Court (i) appoint a guardian *ad litem* to represent Respondent; (ii) find that the Commonwealth of Virginia is the proper jurisdiction for these matters to be determined; (iii) not require Respondent's attendance at any hearing(s) regarding this matter; (iv) appoint Jewish Family Service of Tidewater, Inc. as sole guardian and sole conservator for Respondent and his estate; (v) that such entity be granted and charged with all of the duties and powers enumerated in paragraphs 23-26 of this Petition; (vi) to compel an accounting of Respondent's estate and to revoke that POA held by Brock Beckstedt; (vii) to declare Respondent not indigent and to find his Estate to be sufficient to pay for the costs of this proceeding, and that the his Estate be taxed with all costs and fees expended herein, including but not limited to those fees for the guardian *ad litem* appointed herein, or that in the alternative in the event Respondent is discovered to be indigent and his Estate is found to be insufficient to pay for the costs of this proceeding, that he be deemed indigent and the Commonwealth be taxed with all costs and fees expended herein, including but not limited to those fees for the guardian *ad litem* appointed herein; and (viii) and for such other and further relief as this cause may require.

11

25.     DHS further requests that a protective order be entered appointing JFS as the sole conservator of Respondent's estate with the powers set forth in Virginia Code § 64.2-105, which are incorporated herein by reference and in addition thereto, the named conservator should be authorized:

(a)     To ratify or reject contracts entered into by Respondent;

(b)     To pay any sum distributable for the benefit of Respondent or for the benefit of a legal dependent by paying the sum directly to the distributee, to the provider of goods and services, to any individual or facility that is responsible for or has assumed responsibility for the care and custody, or by paying the sum to the guardian of the incapacitated person or, in the case of a dependent, to the dependent's guardian or conservator;

(c)     To maintain life, health, casualty and liability insurance for the benefit of Respondent, or legal dependents;

(d)     To manage the estate following the termination of the conservatorship until its delivery to the Respondent, or successors in interest;

(e)     To execute and deliver all instruments, and to take all other actions that will serve in the best interests of the Respondent;

(f)     To initiate a proceeding (i) to revoke any power of attorney under the provisions of Virginia Code §64.2-1614, (ii) to seek a divorce, or (iii) to make an augmented estate election under Virginia Code § 64.2-302;

(g)     To borrow money for such periods of time and upon such terms and conditions as to rates, maturities, renewals and security as to such conservator shall deem advisable, including the power to borrow from the conservator, if the conservator is

9

("JFS") were appointed as the permanent limited guardian and full conservator for the Respondent.

22.     JFS, by and through its agents and/or employees, is willing and capable of assisting the Respondent with all of his ADLs (to the extent needed) and financial affairs.

23.     DHS requests that JFS be appointed as the sole guardian for the Respondent and be granted the following powers and charged with the following duties:

(a) To file the annual report required by Virginia Code §64.2-2020;

(b) To maintain sufficient contact with Respondent so as to know of his capacities, limitations, needs, and opportunities;

(c) To visit Respondent as often as necessary;

(d) To encourage the Respondent to participate in decisions, act on his own behalf, and to develop or regain the capacity to manage personal affairs; and

(e) To consider the expressed desire and personal values of Respondent, to the extent known and shall otherwise act in Respondent's best interest and exercise reasonable care, diligence and prudence; and

(f)  Limit the extent of its authority as guardian to the following:

i.) JFS shall consent to and facilitate Respondent being evaluated for some level of assisted living and if such evaluator finds Respondent in need of assisted living, JFS shall ensure Respondent receives the appropriate level of assistance whether in the home or in a proper out of home placement, and as such, if necessary, the Court hereby approves a change of residence only under these conditions; and

ii.) JFS shall ensure Respondent is connected with a primary care physician and a neurologist, evaluated by the same, and ensure that Respondent follows through with any recommended medication management regimen; and

iii.) JFS shall ensure that Respondent is living in a safe and clean environment, with running water and electricity, and if his current home is not to up to those standards, may approve alternative placement and as such, if necessary, the Court hereby approves a change of residence only under these conditions; and

iv.) JFS shall only approve medical treatment or other decisions, not enunciated above, requiring informed consent on behalf of Respondent, where a licensed physician and/or psychiatrist, psychologist, or other competent licensed medical professional indicates to JFS that Respondent is, at the time needed for the decision, not presently able to give informed consent and/or is not oriented to time, place, and manner; and

24.     DHS also requests that pursuant to Virginia Code § 64.2-1009, that the Court find clear and convincing evidence that the Respondent has a severe and persistent mental illness that significantly impairs his capacity to exercise judgment or self-control, that his condition is unlikely to improve in the foreseeable future, and that JFS has a plan for Respondent's treatment in the least restrictive setting suitable to his condition, and that thus, JFS should be able to consent to Respondent's admission to any mental treatment facility or hospital for no more ten days upon meeting all conditions set forth in Virginia Code § 37.2-805.1.

8

ensure a permanent fiduciary could be appointed for Respondent and advised that at the next hearing, it would consider whether Brock Beckstedt should be reinstated as POA over Respondent, and expressly noted that cooperation with JFS and the rest of parties would be a factor in its decision-making process.

18.    Upon information and belief, Respondent's estate *should* consist of some level of social security, possibly some Veteran's benefits, and two pensions/ retirement entitlements, and an investment account with Edward Jones. It is believed all of the real property for which Respondent has access is titled in the name of the James and Joyce Beckstedt Limited Trust, however, Respondent may have other assets or property unknown to DHS.  He should be deemed not indigent until his debts are found to exceed his assets.

19.    Upon information and belief, it was recently discovered that Respondent had in excess of $50,000 in an ABNB account prior to his admission to Eastern State, and as of March 2, 2020, his account balance was approximately $2200.00. Upon information and belief, it was discovered that ABNB and Edward Jones had flagged Respondent's account for possible fraud.

20.    It is unclear where or how the alleged missing funds of Respondent have been used, and to the extent Brock Beckstedt had access to those accounts as POA, he should cooperate and participate in a full accounting of Respondent's accounts and his estate in general to ensure the safety of the Respondent's estate.

21.    DHS now believes that it would be in the best interests of the Respondent if a qualified third-party organization such as Jewish Family Service of Tidewater, Inc.

6

trust owns in Norfolk (the other side is apparently not occupied), and that would like to move the Respondent in with him. Brock Beckstedt further testified that he signs consents for his handicapped brother, and that he had paid some of Respondent's bills while he was at Eastern State. He further testified that Respondent's home in Virginia Beach needs a new furnace and repairs.

16.    Upon information and belief, prior to Respondent's recent incarceration and hospitalizations, APS has had previous referrals for self-neglect and financial exploitation with the Respondent as the named victim. Past reports alleged that Respondent's home was cluttered, that he lacked food, purposely turned off his water and heat, and refused to allow workers on his property to verify concerns and/or have him evaluated. It was also alleged at one time that Respondent's son, Brock Beckstedt, in or about 2018, used the POA to sell property of Respondent in Norfolk without Respondent's knowledge for below market value.  Upon information and belief, the Respondent then refused to sell the property and the buyer sued to enforce the contract in Norfolk Circuit Court.  During that proceeding, the Respondent was appointed a guardian *ad litem* due to concerns for his cognitive functioning. Ultimately, the Norfolk case was dismissed.  *[handwritten: This is GAL information]*

17.    At the conclusion of the EPO hearing on March 2, 2020, this Court did issue an EPO, wherein it appointed Jewish Family Service of Tidewater, Inc. ("JFS") located at 5000 Corporate Woods Drive, Ste. 300, Virginia Beach, Virginia 23462, as temporary limited guardian and temporary full conservator for Respondent, ordered that DHS have access to any location where Respondent may be found, and suspended that POA held by Brock Beckstedt.  The Court further ordered the City to take appropriate action to

*[handwritten: Did not have any time to hire Attorney]*

capacity to meet the essential requirements for his medical, physical, safety, or therapeutic needs without the assistance or protection of a guardian. The Respondent requires assistance with activities of daily living such as money management, shopping, cleaning, medication management, and meal preparation ("ADLs"). He is able to ambulate without assistance. However, until recently, the staff at Eastern State have assisted him with all of his ADLs.

13.     On March 2, 2020, this Court held a hearing with regard to whether it should issue an emergency adult protective services order ("EPO") on behalf of Respondent. After a lengthy hearing where expert testimony was taken, the Court expressly found that while Respondent can at times be oriented and able to give informed consent, there are other times where Respondent is not oriented and not able to give informed consent, and that his level of incapacity at any given time is fluid, that the same is as a direct result of his neurocognitive disorder, and that his condition is expected to worsen such that his periods of lucidity and capacity will become less frequent as his condition progresses, and that unfortunately, the condition is chronic and irreversible.

14.     At the EPO hearing, this Court also expressly found that Respondent is incapable of managing his property and financial affairs without the assistance or protection of a conservator.

15 .     Additionally, at the EPO hearing, the Court took testimony from Respondent's son, Brock Beckstedt, who stated that he held a POA over Respondent. At the EPO hearing, Brock testified that he last was formally employed in 2013 or 2014, that he has approximately $100,000.00 in his own investments, that he presently sells scrape for other income, that he is currently living in one side of a duplex that the family

4

7.      Respondent's native language is English.

8.      Respondent has been diagnosed with Neurocognitive disorder with behavioral disturbance, and needs assistance with certain activities of daily living ("ADLs"; he has displayed short term memory loss, poor frustration tolerance, circumstantial thoughts, and irritability, and may be at risk for self-neglect and poor judgment in the community setting.   Respondent has recently been released from jail and deemed unrestorable to stand trial for certain misdemeanor offenses by this Court.

9.      Respondent has recently been hospitalized twice at Eastern State hospital where doctors have opined, as recently as February 3, 2020, that Respondent should take medication which can slow his decline but that his neurocognitive disorder is not one that can be reversed and will continue to worsen, and as such, recommended Respondent be supervised in the community.

10.      In late January of 2020, Dr. Hasmukh Vyas, also of Eastern State, found Respondent to lack capacity to give informed consent, and as Respondent required treatment, the Williamsburg-James City General District Court issued a judicial authorization under Virginia Code Sec. 37.2-1101 for treatment of Respondent.

11.      Notwithstanding the foregoing, Respondent was recently evaluated by Dr. Louis Leone, Medical Director for the City of Virginia Beach, and while Dr. Leone agreed the Respondent suffers from worsening neurocognitive disorder with behavioral disturbance, at the time of the evaluation, he found Respondent to be oriented to time, place, and manner, and to be aware of his circumstances and limitations.

12.      Notwithstanding the foregoing, at times, Respondent definitely is incapable of receiving and evaluating information effectively to such an extent that he lacks the

3

order and accounting of the Estate of Respondent, and to revoke that power of attorney ("POA") held by co-Respondent, Brock Beckstedt, and in support thereof, states as follows:

      1.      This Petition seeks to appoint a guardian and conservator for Respondent, compel an accounting of Respondent's estate, and to revoke that POA held by Brock Beckstedt.

      2.      The Petitioner, DHS, is located at 256 N. Witchduck Road 1F & 1C, Virginia Beach, Virginia 23462.

      3.      Respondent is an 79 year old male whose date of birth is March 13, 1940, and whose legal address is 349 East Chickasaw Road in Virginia Beach, Virginia, 23462, but who is currently admitted to an assisted living placement in Portsmouth by his temporary limited guardian and full conservator, JFS (hereinafter defined); additional information required under § 64.2-2002(B)(1) is filed simultaneously herewith under seal.

      4.      The Commonwealth of Virginia is the Respondent's "Home State" as that term is defined in Virginia Code § 64.2-2105, and as such, Virginia has exclusive jurisdiction over this proceeding.

      5.      Pursuant to § 64.2-2001(A), the Circuit Court for the City of Virginia Beach is the appropriate venue for this proceeding as the Respondent has resided in Virginia Beach for over 30 years.

      6.      The Respondent is widowed, has two adult sons, namely Bryan Beckstedt whom resides in a group home located at 145 S. Kentucky Ave., Virginia Beach, VA 23452, and Brock Beckstedt, who resides at 9543 Capitol Avenue, Norfolk, VA 23503. Upon information and belief, DHS knows of no other living adult relatives of Respondent.

2

Dorothy Salomonsky
Jewish Family Service of Tidewater, Inc.
5000 Corporate Woods Dr., Suite 300
Virginia Beach, VA 23462

_____

Associate City Attorney

4

sufficient, or the Commonwealth, if the Estate is not sufficient, to reimburse the Petitioner and guardian *ad litem* for all or any costs and fees expended herein.

Enter this _____ day of _____ 2020.

_____
Judge

I ASK FOR THIS:

_____
Christianna Dougherty-Cunningham
Associate City Attorney

2

I ASK FOR THIS:

Christianna Dougherty-Cunningham
Associate City Attorney

SEEN AND AGREED:

Colleen T. Dickerson, Esq.
Guardian *ad litem*

2 of 2

**VIRGINIA: IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH**

CITY OF VIRGINIA BEACH,

                    Petitioner,

v.

                                            CASE NO. CL20-1881

JAMES BECKSTEDT, et. al.

                    Respondents.

Serve:      James Beckstedt
                c/o JFS
                5000 Corporate Woods Dr., Suite 300
                Virginia Beach, VA  23462

                JAMES BECKSTEDT
                349 EAST CHICKASAW RD.
                VIRGINIA BEACH, VA 23462

                BROCK BECKSTEDT
                9453 CAPITOL AVE.
                NORFOLK, VA 23503

## **NOTICE**

PLEASE TAKE NOTICE that on the **16th of March 2020 at 2:30 p.m.** or as soon thereafter as counsel may be heard, the undersigned will petition the Circuit Court of the City of Virginia Beach, Virginia, sitting at the Courthouse at Virginia Beach, Virginia, to appoint a guardian, and for the

CITY OF VIRGINIA BEACH,

By_____
                    Of Counsel

Mark D. Stiles, Esquire
City Attorney
Christianna Dougherty-Cunningham, Esquire
Associate City Attorney
Office of the City Attorney
2401 Courthouse Drive, Building 1
Virginia Beach, VA  23456
757- 385-4531 (Phone)
757-385-5687 (Facsimile)

## **CERTIFICATE OF SERVICE**

I hereby certify that on the day of _____., 2020, a true copy of the foregoing Notice was sent by first-class mail to the following:

James Beckstedt
349 East Chickasaw Rd
Virginia Beach, VA 23462

Brock Beckstedt
9543 Capitol Ave,
Norfolk, VA 23503

Bryan Beckstedt
c/o Kentucky Ave ICF Group Home
145 South Kentucky Avenue
Virginia Beach, VA 23452

Dr. Louis Leone
258 N. Witchduck Rd.
Virginia Beach, VA 23462

Colleen T. Dickerson Esq.
1140 Cedar Point Drive
Virginia Beach, VA  23451
*Guardian ad litem*

3

CDC/akw
Enclosures
Cc w/encl:    James Beckstedt
             Brock Beckstedt
             Bryan Beckstedt
             Dr. Louis Leone
             Dorothy Salamonsky, JFS
             Colleen T. Dickerson Esq.
             Nancy Woods, HRAPPS